IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| DAVID L. THORNSBERRY, | ) | Civil Action No. 4:08-4075-HMH-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended,

42 U.S.C. § 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social

Security, denying plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security

Income (SSI). The only issues before the Court are whether the findings of fact are supported by

substantial evidence and whether proper legal standards have been applied. This case was referred

to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

## I. PROCEDURAL HISTORY

The plaintiff, David L. Thornsberry, filed an application for DIB and SSI on October 18,

2005, alleging a disability onset date of September 9, 2005. (Tr. 16, 105). Plaintiff requested a

hearing before an administrative law judge (ALJ) after his claim was denied initially and on

reconsideration. (Tr. 16, 44-48, 53-54 ). A hearing was held on January 4, 2008, before Francis F.

Talbot, ALJ, at which plaintiff appeared with his counsel, David A. Bornhorst, and testified. A

vocational expert, Arthur F. Schmitt, also testified at the hearing. (Tr. 26-41). The ALJ issued a decision on February 25, 2008, finding that plaintiff was not disabled because he could perform his past relevant work as a surveillance system monitor. (Tr. 24). As the Appeals Council denied plaintiff's subsequent request for review of the ALJ's decision (Tr. 1-10), the ALJ's decision became the Commissioner's final decision for purposes of judicial review under 42 U.S.C. § 405(g). See 20 C.F.R. §§ 404.981 and 416.1481. This action was filed on December 19, 2008.

## II. FACTUAL BACKGROUND

The plaintiff, David A. Thornsberry, was born April 11, 1957 and was 50 years old on the date of the administrative hearing before the ALJ. (Tr. 29). Plaintiff testified that he obtained a GED while in the Army. Plaintiff alleged disability due to chronic obstructive pulmonary disease, obesity, depression, chronic ulcerative colitis, and obstructive sleep apnea.

## III. DISABILITY ANALYSIS

The plaintiff's arguments consist of the following, quoted verbatim:

1.  The ALJ's finding that the plaintiff could return to his past relevant work as a security monitor is not supported by substantial evidence.

2.  The ALJ's finding concerning the plaintiff's credibility is not supported by substantial evidence.

3.  The ALJ did not consider all of plaintiff's impairments and their combined effects.

In his decision of February 25, 2008, the ALJ made the following findings of fact and conclusions of law:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.

2.    The claimant has not engaged in substantial gainful activity since September 9, 2005, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq*., 416.920(b) and 416.971 *et seq*.).

3.    The claimant has the following severe impairments: chronic obstruction pulmonary disease (COPD), obesity, and depression (20 CFR 404.1520(c) and 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 416.920(d), 416.925 and 416.926).

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work[1] allowing a sit-stand option with occasional climbing of ramps and stairs. Additionally, the claimant can occasionally balance, stoop, kneel, crouch, and crawl: however, the claimant should never climb ladders, scaffolds, and ropes and should never be exposed to extreme temperatures, fumes, odors, gases, etc. and/or hazards.

6.    The claimant is capable of performing past relevant work as a security monitor. In accordance with the testimony provided by the vocational expert, this work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7.    The claimant has not been under a disability, as defined in the Social Security Act, from September 9, 2005, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

The Commissioner asserts that the ALJ properly followed the five-step sequential evaluation process, finding at step one that plaintiff had not engaged in substantial gainful activity since the

---

[1] Sedentary work as defined by the Commissioner of Social Security, specifically states that the claimant can lift and carry 10 pounds occasionally and light items frequently, stand and walk two-hours in an eight-hour workday, and sit for six-hours in an eight-hour workday.

alleged onset date of September 9, 2005. The Commissioner argues that, at step two, the ALJ properly found that plaintiff had the severe impairments of COPD, obesity, and depression and, at step three, properly determined that plaintiff's impairments or combination of impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The Commissioner further argues that the ALJ properly determined that plaintiff's subjective complaints were not fully credible and that he had the residual functional capacity (RFC) to perform a limited range of unskilled sedentary work. The Commissioner maintains that, at step four, the ALJ properly found that plaintiff could return to his past relevant work as a surveillance system monitor.

Under the Social Security Act (the Act), 42 U.S.C. § 405 (g), this Court's scope of review of the Commissioner's final decision is limited to determining: (1) whether the decision of the Commissioner is supported by substantial evidence, and (2) whether the legal conclusions of the Commissioner are correct under controlling law. Myers v. Califano, 611 F.2d 980, 982-83 (4th Cir. 1988); Richardson v. Califano, 574 F.2d 802 (4th Cir. 1978). "Substantial evidence" is that evidence which a "reasonable mind might accept as adequate to support a conclusion." Richardson v Perales, 402 U.S. 389, 390 (1971). Such evidence is generally equated with the amount of evidence necessary to avoid a directed verdict. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). The Court's scope of review is specific and narrow. It does not conduct a de novo review of the evidence, and the Commissioner's finding of non-disability is to be upheld, even if the Court disagrees, so long as it is supported by substantial evidence. 42 U.S.C. § 405 (g) (1982); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

The general procedure of a Social Security disability inquiry is well established. Five

questions are to be asked sequentially during the course of a disability determination. 20 C.F.R. §§ 404.1520, 1520a and 416.920, 416.920a. An ALJ must consider: (1) whether the claimant is engaged in substantial gainful activity, (2) whether the claimant has a severe impairment, (3) whether the claimant has an impairment which equals a condition contained within the Social Security Administration's official listing of impairments (at 20 C.F.R. Part 404, Subpart P, Appendix 1), (4) whether the claimant has an impairment which prevents past relevant work, and (5) whether the claimant's impairments prevent him from any substantial gainful employment.

Under 42 U.S.C. §§ 423 (d)(1)(A) and 423(d)(5), pursuant to the Regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." See 20 C.F.R. §§ 404.1505(a) and 416.905(a); Blalock, 483 F.2d at 775.

If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); Hall v. Harris, 658 F.2d 260 (4th Cir. 1981). An ALJ's factual determinations must be upheld if supported by substantial evidence and if proper legal standards were applied. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

A claimant is not disabled within the meaning of the Act if he can return to his past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82-62. The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423 (d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. Grant v. Schweiker, 699 F. 2d 189, 191 (4th Cir. 1983).

5

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the national economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy that the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. Id. at 191.

## IV. MEDICAL REPORTS

The undersigned has reviewed the medical records and finds many of the reports relevant to the issues in this case. The medical records as set out by the Commissioner in his brief have not been disputed by the plaintiff. Therefore, the undisputed medical evidence as stated by the Commissioner is set forth herein.

Plaintiff was seen by Salvatore Moscatello, D.O., on four occasions from March 2003 to January 2006 for treatment of ulcerative pan-colitis. (Tr. 231-32). Under Dr. Moscatello's supervision, plaintiff was taking medication which appeared to help. (Tr. 232).

Plaintiff reported to the Medical University of South Carolina (MUSC) for treatment of a number of ailments from November 2003 to June 2005. (Tr. 169-212). Initially, plaintiff was treated for minor illnesses that quickly improved. (Tr. 209-11). In December 2003, plaintiff was diagnosed with bronchitis and nicotine dependence, which became acute over the next few months. (Tr. 205-207). Plaintiff complained of fatigue and shortness of breath. (Tr. 205). He reported that he smoked two packs of cigarettes per day. (Tr. 205). His physician prescribed medication and recommended that he stop smoking. (Tr. 206). After taking medications, plaintiff reported that he had been doing

better, but still had occasional wheezing, shortness of breath and fatigue. (Tr. 203). The next month, plaintiff reported muscle spasms that improved with heat and massage. (Tr. 200). Plaintiff sought no medical treatment until four months later, when he returned with complaints of malaise, fatigue and muscle cramps. (Tr. 195). The assessment was vertigo, myalgia and fatigue. (Tr. 196). He also complained of symptoms of major depressive disorder. (Tr. 196). His physician prescribed medication, but it made plaintiff sleepy. (Tr. 191). The new medication improved plaintiff's depressive symptoms. (Tr. 189). Ten months later, however, plaintiff complained of side effects from medication. (Tr. 187). His physician noted that, if medication did not help, he would refer plaintiff to a psychiatrist. (Tr. 188). In December 2004, plaintiff underwent a sleep study, which indicated that plaintiff had sleep apnea. (Tr. 249-50).

On January 13, 2005, Plaintiff reported to MUSC with swelling in his feet, legs, hands and face. (Tr. 185). Other than the edema, examination was normal. (Tr. 185-86). The assessment was edema, and his physician ordered some diagnostic tests. (Tr. 186). A CT scan of the thorax revealed emphysema in the upper lobes of the lungs; an ECG revealed an ejection fraction of 45% (below normal), and a chest x-ray revealed plaintiff's lungs were hyperinflated. (Tr. 267, 269, 270). His physician noted that the testing suggested chronic obstructive pulmonary disease (COPD) and recommended treatment. (Tr. 183-84). Another physician recommended home oxygen. (Tr. 179). A CPAP machine was prescribed for nocturnal use. (Tr. 176). A month later, plaintiff reported that his symptoms had improved, but that he still had symptoms. (Tr. 174). Plaintiff reported that he quit his job delivering pizza and was working part-time at a security desk watching a monitor screen. (Tr. 174). In June 2005, plaintiff reported that he was using oxygen and his CPAP. (Tr. 171). He said his symptoms had improved, but that he still had shortness of breath. (Tr. 171). He was still smoking,

but hoped that smoking cessation and weight loss would lead to better functioning. (Tr. 171-72). Later that month, plaintiff was hospitalized with complaints of chest pain and shortness of breath. (Tr. 150). Physical exam revealed COPD, but otherwise his examination was normal. (Tr. 158). Shortly after discharge, plaintiff reported that his chest pain had not recurred. (Tr. 169). In January 2006, plaintiff reported that he was unable to stop smoking. (Tr. 258).

Plaintiff reported to Daniel Bates, M.D., for a consultative examination in March 2006. (Tr. 233-35). He complained of shortness of breath and claimed he needed to use a cane. (Tr. 233). He claimed he had difficulty walking and standing and that he could not climb stairs. (Tr. 233). He said that he drove, but denied he did any household chores. (Tr. 233). Examination revealed labored breathing and wheezes, but was otherwise normal. (Tr. 234).

Soon thereafter, a State agency physician, George Keller, M.D., reviewed plaintiff's medical records and assessed his residual functional capacity. (Tr. 238-45). Dr. Keller concluded that plaintiff could perform a range of light work. (Tr. 239-44).

Plaintiff received treatment for colitis, sinusitis, and emphysema in April 2007. (Tr. 260). In addition, he sought treatment for depressive symptoms in August 2007. (Tr. 262-63). Psychological examination was normal, but plaintiff was assessed with anxiety. (Tr. 263). Physical examinations revealed that plaintiff's breathing was normal, with no wheezing, crackles, or rales. (Tr. 263).

## V. ADMINISTRATIVE HEARING TESTIMONY

Plaintiff testified that he was born in 1957 and that he had a high school education obtained by completing his GED while in the Army. (Tr. 29). He said he last worked in August 2005 as a

surveillance system monitor. (Tr. 29). He said he stopped working because he was "let go due to my health." (Tr. 29). He said that he had missed six days of work in six months. (Tr. 30). Plaintiff testified that he had breathing problems that he tried to alleviate with medication. (Tr. 31-32). He said that he used an oxygen machine and a CPAP machine when he slept and sometimes used oxygen during the day when he had a bad breathing day. (Tr. 33, 36). He said that he no longer smoked, but that it took him 15 years to quit. (Tr. 34). He said that he had difficulty walking and could not climb stairs. (Tr. 34). He said that he weighed 268 pounds and was trying to lose weight. (Tr. 35). He reported that his colitis was in remission. (Tr. 35). He said that he had panic attacks from anxiety. (Tr. 36). He also said that he had fallen twice. (Tr. 36). He said that shortness of breath was his biggest problem. (Tr. 37).

After Plaintiff testified, the ALJ asked the vocational expert, Arnold Schmitt, Ph.D., to testify. (Tr. 37-38). Plaintiff's counsel stipulated that Dr. Schmidt was a vocational expert. (Tr. 38). Dr. Schmitt testified that Plaintiff's past work was as a delivery driver (semi-skilled, medium strength, Dictionary of Occupational Titles (DOT) 906.683-022) and as a surveillance system monitor (unskilled, sedentary, DOT 379.367-010). (Tr. 238). The ALJ asked Dr. Schmitt what work a person could perform with Plaintiff's background and the residual functional capacity of light work; with a sit/stand option, occasionally climbing ramps or stairs but no ladders, scaffolds or ropes; occasional balancing, stooping, bending, kneeling, crouching or crawling; avoiding extremes of temperature; no fumes, odors, airborne irritants; and no hazardous environment. (Tr. 38). After initially testifying that the person could not perform plaintiff's past relevant work, he said that the person could perform the job of surveillance system monitor. (Tr. 38-39). He noted that the

surveillance system monitor job would allow for a sit/stand option, which was a limitation included in the residual functional capacity. (Tr. 39).

# VI. PLAINTIFF'S SPECIFIC ARGUMENTS

**The ALJ properly found that plaintiff could return to his past relevant work as a surveillance system monitor.**

Past relevant work is work that a claimant has done within the past fifteen years, that was substantial gainful activity,[2] and that lasted long enough for the claimant to learn to do it. 20 C.F.R. §§ 404.1565(b)(1) and 416.965(b)(1). A claimant is not disabled within the meaning of the Act if he can return to his past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82-62. The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423 (d)(5). He must make a prima facie showing of disability by showing he was unable to return to his past relevant work. Grant v. Schweiker, 699 F. 2d 189, 191 (4th Cir.1983), Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

Plaintiff argues that his part-time job as a security monitor (i.e. surveillance system monitor) at Dillard's Department Store from March 2005 to August 2005 was not past relevant work. Plaintiff argues that the job was an unsuccessful work attempt[3] and that SSA disability determination reports

---

[2] 20 C.F.R. §§ 404.1572 and 416.972 define substantial gainful activity as work activity, even if such work is done on a part-time basis for less pay or with less responsibility than previous work, that involves doing significant physical or mental activities. The work activity is work that is usually done for pay or profit, whether or not a profit is realized.

[3] 20 C.F.R. §§ 404.1574(c)(1)-(5) and 416.974(c)(1)-(5) set forth the requirements for determining whether a claimant's work should be classified as past relevant work or as an unsuccessful work attempt. If a claimant performs work at the substantial gainful activity earnings level for more than six months the SSA will not consider the work to be an unsuccessful

and notes in the case file substantiate this fact. (Pl. Br. 6-9, Tr. 98, 100, 101). In support of this argument, plaintiff asserts that the surveillance system monitor job lasted only six months and that he earned less that the minimum amount necessary to qualify the work as substantial gainful activity.[4] Plaintiff argues that his past relevant work should have been found to be pizza delivery driver and pizza restaurant manager, jobs that he performed for approximately fourteen years, from 1990 to 2004. The plaintiff argues that the onset date of his disability should have been October 1, 2004, as was noted in the case file and on the initial disability denial notice of November 22, 2005 (Tr. 42-43), which he alleges was the date he stopped working as a pizza delivery driver. (Pl. Br. 3). Plaintiff argues that the ALJ failed to make a specific finding that the surveillance system monitor job was performed at a sufficient level and for a sufficient period of time to be properly considered as past relevant work as defined in 20 CFR §§ 404.1520(f) and 416.920(f). (Pl. Br. 5, Pl. R. Br. 2-3).

The Commissioner argues that: evidence in the record shows that plaintiff's past work was as a surveillance system monitor (Tr. 94-95, 105-106, 112-113, 121); plaintiff testified at the hearing that this was his past work (Tr. 29); and the vocational expert testified that plaintiff's past work was as a surveillance system monitor. (Tr. 38). The Commissioner argues that, according to plaintiff's

---

work attempt regardless of why it ended or was reduced below the substantial gainful activity earnings level. 20 C.F.R. §§ 404.1574(c)(5) and 416.974(c)(5). If a claimant works between three months and six months, the SSA will consider the work to be an unsuccessful work attempt if it ended, or was reduced below the substantial gainful activity earnings level, within six months because of the claimant's impairment or because of the removal of special conditions which took into account the claimant's impairment and permitted the claimant to work and: (i) the claimant was frequently absent from work due to the impairment, (ii) the claimant's work was unsatisfactory because of the impairment, (iii) the claimant worked during a period of temporary remission of the impairment, or (iv) the claimant worked under special conditions that were essential to performance of the work and those conditions were removed. See 20 C.F.R. §§ 404.1574(c)(4) and 416.974(c)(4).

[4] 20 C.F.R. §§ 404.1574(b) and 416.974(b) set forth the earnings guidelines for determining substantial gainful activity.

reports and testimony, he performed the unskilled, sedentary job of surveillance system monitor for six months, from March to August 2005, and therefore had sufficient time to learn the job. See 20 C.F.R. §§404.1568 and 416.968 (unskilled job can usually be learned in thirty days). The Commissioner argues that plaintiff earned $866 per month (Tr. 95) which was above the substantial gainful activity level of $830 for 2005, thus disqualifying the surveillance system monitor job from being considered an unsuccessful work attempt. See 20 C.F.R. §§ 404.1574 and 416.974; POMS DI 10501.015; and 69 Fed. Reg. 206, 62502 (October 26, 2004). Thus, the Commissioner argues, plaintiff's work as a surveillance system monitor was properly determined by the ALJ to be past relevant work.

In Seitz v. Astrue, 2009 U.S. Dist. LEXIS 677701 (E.D.N.C. August 4, 2009) the claimant argued that the ALJ erred in classifying his four-month job as a short-order cook during the 1990s as past relevant work and asserted that the ALJ's decision was not supported by substantial evidence because it did not expressly consider whether his prior work as a short-order cook or as a self-employed bathroom cleaner qualified as an unsuccessful work attempt rather than as past relevant work. The Court found that the apparent omission in the ALJ's decision was explained by a review of the transcript from the claimant's hearing "which indicates that plaintiff does not seem to have raised this argument before the ALJ despite testimony regarding plaintiff's prior work in both positions by a vocational expert." Seitz, 2009 U.S. Dist. LEXIS at *7. The court noted that the claimant "bears the burden of establishing that prior work qualifies as an unsuccessful work attempt at the fourth stage of the applicable analysis," citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993). The court found "that the ALJ did not consider an argument not raised by plaintiff is neither

surprising nor erroneous. Accordingly, Plaintiff's objection on the ground that the ALJ did not consider an argument that Plaintiff did not raise lacks merit." <u>Seitz</u>, 2009 U.S. Dist. LEXIS at *8.

Here, in similar fashion, plaintiff asserts an argument that he did not raise at the hearing or at the Appeals Council level (<u>see</u> Tr. 7-10), and assigns error to the fact that the ALJ failed to make a specific finding that his past work as a surveillance system monitor was performed at a sufficient level and for a sufficient period of time to be properly considered as past relevant work, as defined in 20 C.F.R. §§ 404.1520(f) and 416.920(f). As did the plaintiff's argument in <u>Seitz</u>, plaintiff's argument on the same ground in the instant case lacks merit. Plaintiff bears the burden of establishing that his prior work qualified as an unsuccessful work attempt at the fourth stage of the applicable analysis and he did not satisfy that burden at the ALJ hearing.

Plaintiff argues that the Social Security Administration previously found that his part-time work as a surveillance system monitor during a six-month period from March 2005 to August 2005 was an unsuccessful attempt to work and not past relevant work. (Tr. 101, 102, 104). However, the case record reflects, while there was a recommendation that plaintiff's alleged disability onset date be designated as October 1, 2004 and that his six-month job as a surveillance system monitor be considered as an unsuccessful work attempt, various other SSA documents, forms, and notices substantiate that such recommendation was not followed. The SSA's "explanation of determination," which was sent to plaintiff when his claim was denied prior to the ALJ hearing, contradicts any contention that plaintiff's prior work as a surveillance system monitor was not considered by the SSA to be past relevant work. The notice stated "You state that you worked in the past as a security camera operator. Although you are unable to return to this type of work as you describe it, we have determined that you are able to do this type of work as it is described in the national economy." (Tr.

53-54). Plaintiff's own brief in this case states "In his application for disability benefits and supplemental security income Mr. Thornsberry alleged that the onset date of his disability was September 9, 2005," not October 1, 2004. (Pl. B. 1). While plaintiff's brief states that he "stopped working in the pizza business on October 1, 2004." (Pl. B. 2), the case record reflects that plaintiff told the SSA he worked at Papa John's Pizza from March 2004 until December 2004. (Tr. 112, 142). Plaintiff alleges in his brief that the SSA's "disability determination and transmittal determinations on plaintiff's disability insurance and SSI claims stated that the onset date for plaintiff's disability was October 1, 2004. Tr. 42-43. This was the date plaintiff stopped working as a pizza delivery driver." (Pl. B. 3). However, plaintiff's own "work history report" to the SSA (Tr. 112) contradicts this assertion in his brief. He did not testify at the hearing as to when he left his final job as a pizza delivery driver. Thus, the evidence in the record is that he worked in that capacity until December 2004, not until October 1, 2004 as he alleged in his brief and reply brief. Plaintiff's onset date could not have been established as October 1, 2004 by the SSA, when evidence in the case record shows that he continued to work as a pizza delivery driver until December 2004.[5]

At the hearing, plaintiff testified that he last worked in August 2005 as a camera operator for Dillard's and was there for six months before he was let go due to missing work six times in six months because of his health. He testified that he could leave the small surveillance room at will if

---

[5] The record also reflects that plaintiff's applications for both SSI and DIB state that his disability began on September 9, 2005 (Tr. 78) and that he became unable to work on September 9, 2005. (Tr. 84). While the aforementioned SSA "work activity report," dated October 18, 2005, states "recommended date of onset 10/01/2004 which is the first bother[sic] date due to an unsuccessful work attempt which lasted 6 months" (Tr. 98), other SSA "disability report - field office" forms in the record indicate that the alleged onset date was September 9, 2005. (Tr. 100). A "disability report -adult" form shows that, in response to the question "When did your illnesses, injuries or conditions first bother you?", plaintiff answered "October 1, 2004." (Tr. 105). In response to the question "When did you become unable to work because of your illnesses, injuries or conditions?" plaintiff responded "September 9, 2005." (Tr. 105).

he needed to go to the bathroom. (Tr. 29-30). The ALJ's decision referred to this testimony and specifically stated that he "was let go after missing too many days within a six month period." (Tr. 21). The ALJ's decision also specifically cited the Dictionary of Occupational Titles (DOT) job description for surveillance system monitor. (Tr. 24). Substantial evidence supports the ALJ's finding that plaintiff's past relevant work was as a surveillance system monitor.

Plaintiff next argues that the ALJ's colloquy with the vocational expert (VE) was not sufficient to establish that it was the VE's opinion that the plaintiff, or an individual with all of the plaintiff's impairments and limitations, could perform the job of surveillance system monitor. Plaintiff argues that the VE was not asked by the ALJ and did not testify regarding all of the limitations set out in the ALJ's residual functional capacity (RFC) finding. (Pl. Br. 6-8, Pl. R. Br. 2-3). Plaintiff asserts that the VE testified that a person could perform a surveillance system monitor job with a sit/stand option at will. But, plaintiff argues, the VE did not testify that a person who could only occasionally stoop, bend, kneel, climb ramps or stairs or who could not be exposed to odors, extreme temperatures, gases, etc. (i.e. a person with the limitations set out in the ALJ's RFC finding) could perform a surveillance system monitor job.

The Commissioner argues that plaintiff's contention is simply not supported by the record. The Commissioner asserts that the ALJ asked the VE to consider a person with plaintiff's residual functional capacity, including all the limitations (Tr. 38, see Tr. 20) and the VE testified that the person could perform the job of surveillance system monitor (Tr. 38). (Def. Br. 11-12).

The ALJ and plaintiff's counsel asked the VE only a few questions at the hearing (Tr. 38-40)

> ALJ:    Describe this gentleman's past work from an exertional and
>         skill point of view?
> VE:     A driver delivery specific vocational preparation, 3 semi-

skilled, strength a 3 medium. DOT of 906.683-022. Surveillance system monitor. 2 unskilled, 1 sedentary. 379.367-010.

ALJ: Okay. I'm going to give you this hypothetical and if past or relevant work fits so be it. Let me know. I want to go to light sit/stand at will. No more than occasionally on a ramp or stair, no ladders, scaffolds or ropes. Occasionally balancing, stooping, bending, kneeling, crouching or crawling. I want him to avoid extremes of temperature. No fumes, odors, basically airborne irritants and no hazardous environment. Is there any work this gentleman could do and could he do any of his past, relevant work?

VE: He could not do his past relevant work.

ALJ: He cannot be a security guard. He cannot be a security monitor?

VE: I'll take that back. He could do a sit/stand option on that. Yes, sir.

ALJ: Okay, and that's a sedentary?

VE: Sir?

ALJ: That's a sedentary job?

VE: Yes, sir.

ALJ: Okay, if I accepted all testimony presented today as fully credible is there any work this individual could do?

VE: My opinion there would be none.

ALJ: And I assume your testimony is consistent with the DOT except the DOT doesn't provide for a sit/stand option is that correct?

VE: That's correct.

ALJ: Counsel?

ATTY: Dr. Schmidt, an individual with the same limitations as His Honor said, in your experience as a vocational expert, would the use of a nebulizer machine at unscheduled times to, you know, the 15 minute using the machine, could they perform any jobs–

ALJ: Wait. Unscheduled 15 minute breaks during the day?

ATTY: Well, 15 minute use of the machine as the claimant testified–

ALJ: Well let's put it in functional terms.

ATTY: Okay, Your Honor.

ALJ: Whether he is using the machine or not.

ATTY: I understand, yes.

ALJ: So in other words you are saying he has to take 15 minutes breaks a number of times during the day and they are unscheduled?

```
ATTY: Unscheduled. Yes, Your Honor.
ALJ:    Is there any work?
VE:     There is no work then.
ALJ:    Anything further? Go ahead counselor.
ATTY: If an individual – not every month, but every other month would have
        to miss work for four days because of chronic diarrhea
        could they hold down –
ALJ:    Well I don't care why he'd have to miss work. Just say had to miss
        work four times.
ATTY: Miss work four times.
VE:     In my opinion there would be none.
ATTY; That's all I have, Your Honor.
ALJ:    I don't believe there would be anything further. The hearing is closed.
```
(Tr. 38-40)

Plaintiff's argument is refuted by a reading of the hearing transcript. The initial misstatement by the VE, which he quickly caught and corrected, does not suffice as the basis for plaintiff's argument that the ALJ's finding that plaintiff's past relevant work was as a surveillance system monitor was not proper. Nor does the relatively brief exchange between the ALJ and the VE and the manner in which the hypothetical question was posed (i.e. using a capacity for light work, which under 20 C.F.R. §§ 404.1567(b) and 416.967(b) includes the capacity to also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time), persuade this Court that the VE's testimony failed to establish that plaintiff can perform such work, despite his limitations.

Plaintiff argues in the alternative that, even if the surveillance system monitor job can be considered as past relevant work, the ALJ's finding that plaintiff can perform such past relevant work is not supported by substantial evidence, because the ALJ's decision fails to comply with SSR 82-62. Plaintiff points out that SSR 82-62 requires an ALJ to make three specific findings of fact in connection with his determination of a claimant's residual functional capacity: 1) a finding of fact as to the individual's RFC; 2) a finding of fact as to the physical and mental demands of the past

job/occupation; 3) a finding of fact that the individual's RFC would permit a return to his or her past job or occupation. Plaintiff argues that the ALJ's decision fails to include the second required finding, i.e. a finding of fact as to the physical and mental demands of his past job as a surveillance system monitor.

The Commissioner argues that information necessary to make the required finding of fact as to the physical and mental demands of past work can be obtained by the ALJ from several sources: the claimant, the employer, co-workers, vocational experts or specialists, or other resources. See 20 C.F.R. §§ 404. 1560(b)(2) and 416.960(b)(2); 20 C.F.R. §§ 404.965(b) and 416.1565(b). The Commissioner asserts that SSR 82-62 acknowledges that a determination of the claimant's ability to do past relevant work (PRW) might require "in some cases, supplementary or corroborative information from other sources such as employers, the <u>Dictionary of Occupational Titles</u> (<u>DOT</u>), etc on the requirements of the work as generally performed in the economy." The Commissioner argues that, here, the ALJ relied on the <u>DOT</u>, through his questioning of the vocational expert at the hearing to establish the physical and mental demands of plaintiff's past work. (Tr. 39). As noted above, plaintiff argues that the ALJ's brief colloquy with the VE was not sufficient to establish that it was the VE's opinion that the plaintiff, or an individual with all of the plaintiff's impairments and limitations, could perform the job of surveillance system monitor. Plaintiff argues that, contrary to the ALJ's finding, the hearing transcript shows that the VE only testified concerning the performance of a surveillance system monitor job with one limitation, a sit/stand at will option. Plaintiff argues that the VE was not asked by the ALJ and did not testify regarding the other limitations set out in the ALJ's residual functional capacity finding. (Pl. R. Br. 2-3). Those arguments, as noted above, lack merit. Finally, plaintiff argues that the VE failed to testify that he had any first-hand professional

knowledge of surveillance system monitors performing their jobs with a sit/stand option at will. (Pl. Br. 6). The VE acknowledged in his testimony that, while the <u>DOT</u>'s description of the surveillance system monitor job did not specifically provide for a sit/stand option, the job could be performed with a sit/stand option at will. (Tr. 39).

Contrary to plaintiff's contention, the ALJ's decision makes a specific finding of fact as to the physical and mental demands of plaintiff's past relevant work as a surveillance system monitor. The ALJ's finding is based on plaintiff's statements in the case record, the job description in the <u>DOT</u>, and the testimony of the VE at the hearing. The ALJ specifically found, in the final paragraph of his discussion concerning plaintiff's RFC:

> In summary, the above residual functional capacity assessment is supported by the evidence of the record. The claimant reported in June 2005 that in his job as a security monitor, he sat at a desk and watched a monitor screen (Exhibit 3F).[Tr. 113]. In March 2006 Dr. Bates noted that the claimant had no problems with sitting for an extended period and moreover, he had no specific joint problems that would prevent him from ambulating (Exhibit 6F). Therefore, the undersigned finds that the claimant's impairments would not prevent him from performing sedentary work with additional limitations as described in the decision.

(Tr. 24)

The ALJ specifically found, in the first paragraph of his discussion concerning plaintiff's ability to perform his past relevant work:

> In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as actually and generally performed in the national economy. As a result of his residual functional capacity as described above, the claimant is able to perform his past relevant work as a surveillance system monitor (<u>DOT</u> #: 379.367-010) with SVP 2 skill level. Such a finding is also supported by the testimony of Dr. Arthur Schmitt, Ph.D., an impartial vocational expert, who testified at the hearing that as a result of claimant's residual functional capacity, as stated above, the claimant was able to return to his prior

work activity as a surveillance system monitor. The undersigned
specifically asked the vocational expert, pursuant to the requirements
set forth in Social Security Ruling 00-04p, whether the opinions
expressed were consistent with the occupational information provided
in the <u>Dictionary of Occupational Titles</u> (<u>DOT</u>). The vocational expert
answered in the affirmative. However, with regard to the at will sit-
stand requirement, the vocational expert testified that this limitation
is not found within the <u>DOT</u> concerning any occupation. He further
testified, however, that they were available with respect to the above
occupation he identified based upon his professional knowledge
and/or personal observations. Based upon the provisions of SSR 00-
04p, the undersigned finds the vocational expert's testimony to be
reasonable and reliable, since he has first-hand or professional
knowledge, as indicated above.

(Tr. 24-25)

SSR 00-4p does not require that a vocational expert or an ALJ use any particular specific

terminology such as "based on first-hand or professional knowledge" to explain the basis of a

variation or conflict between the VE's opinion evidence about the requirements of a job or occupation

and the information provided in the <u>DOT</u> about the job or occupation. The standard required of an

ALJ in explaining why s/he relies on the testimony of a VE when such testimony is not consistent

with information found in the <u>DOT</u> is that the ALJ:

must resolve this conflict before relying on the VE or VS evidence to
support a determination or decision that the individual is or is not
disabled . The adjudicator will explain in the determination or decision
how he or she resolved the conflict. The adjudicator must explain the
resolution of the conflict irrespective of how the conflict was
identified.

SSR 00-4p

Here, the ALJ properly determined that the VE's testimony about the requirements of the

surveillance system monitor job was consistent with the <u>DOT</u> except for the sit/stand at will option,

which the ALJ asked the VE to include based on the ALJ's determination of plaintiff's RFC. The ALJ

properly explained in his decision why he relied on the VE's testimony that "he [i.e. plaintiff] could

do a sit/stand option on that [job]" (Tr. 39) when the <u>DOT</u> did not specifically include a sit/stand option in the basic description of the job (<u>DOT</u> # 379.367-010). The ALJ's characterization of the VE's testimony as being based on his professional knowledge or personal observations as a vocational expert is an accurate and reasonable explanation as required by SSR 00-4p. Plaintiff's counsel stipulated to Dr. Schmitt's qualifications as a vocational expert (Tr. 37-38, 74-76). Dr Schmitt was sworn and testified under oath. (Tr. 38). There is no merit in plaintiff's argument on this point.

**The ALJ's finding concerning plaintiff's credibility is supported by substantial evidence.**

In evaluating a claimant's symptoms, including pain, the ALJ must first consider whether there is an underlying medically determinable physical or mental impairment(s), i.e. an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques, that could reasonably be expected to produce the individual's pain or other symptoms. Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. <u>See</u> 20 C.F.R. §§ 404.1529 and 416.929, and SSR 96-7p.

When a claimant's statements about the intensity, persistence, and limiting effects of his pain or other symptoms are not substantiated by objective medical evidence, the ALJ is required to make a finding on the credibility of the claimant's subjective statements, based on a consideration of the entire case record, under the two-part test articulated in 20 C.F.R. §§ 404.1529(b) and (c) and 416.929(b) and (c), SSR 96-7p, and a long line of Fourth Circuit cases including <u>Walker v. Bowen</u>, 889 F.2d 47 (4th Cir. 1989), <u>Hyatt v. Sullivan</u>, 899 F.2d 329 (4th Cir. 1990)(<u>Hyatt III</u>),

Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994), Craig v. Chater, 76 F.3d 585 (4th Cir. 1996), and Hines v. Barnhart, 453 F.3d 559 (4th Cir. 2006).

In making the credibility determination, the ALJ must consider: the objective medical evidence (medical signs and laboratory findings): the individual's own statements about the symptoms: any statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual: and any other relevant evidence in the case record. 20 CFR §§ 404.1529, 416.929 and SSR 96-7p also require the ALJ to review seven specific factors when making a credibility determination: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g. lying flat on his back, standing for 15 to 20 minutes every hour, or sleeping on a board); and, (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

> It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7p.

The ALJ need not totally accept or totally reject the individual's statements. The ALJ may find all, only some, or none of an individual's allegations to be credible. The ALJ may also find an individual's statements to be credible to a certain degree. Moreover, finding that an individual's statements are not credible, or not wholly credible, is not in itself sufficient to establish that the individual is not disabled. All of the evidence in the case record, including the individual's statements, must be considered before a conclusion can be made about disability. Allegations concerning the intensity and persistence of pain or other symptoms may not be disregarded solely because they are not substantiated by objective medical evidence. See SSR 96-7p.

Here, the ALJ found that plaintiff's statements about the intensity, persistence, and functionally limiting effects of his symptoms were "not credible to the extent they are inconsistent with the residual functional capacity assessment." (Tr. 21). As part of his credibility determination the ALJ found that "claimant's reports to his treating and examining physicians, as well as findings upon objective examination, are inconsistent with such significant restrictions and complaints of pain." (Tr. 22). The ALJ noted that "given the claimant's allegations of totally disabling symptoms, one might expect to see some indication in the treatment records of restrictions placed on the claimant by his treating physician; however, a review of the record in this case reveals no restrictions were recommended." (Tr. 22). The ALJ further found that "the claimant either did not complain [to treating and examining physicians] of such significant restrictions and/or pain, or failed to mention them altogether." (Tr. 22). The ALJ determined that "[a]lthough the inconsistent information provided by the claimant may not be the result of a conscious intention to mislead, nevertheless the inconsistencies suggest that the information provided by the claimant generally may not be entirely reliable." (Tr. 22).

The ALJ also found that:

> [w]hile the claimant testified that he had stopped smoking, the treatment note in October 2005 indicated that the claimant was "still smoking." (Exhibit 4F). Dr. Bates noted in March 2006 that the claimant was smoking 1½ pack per day (Exhibit 6F). In October 2006 Dr. Clifford[6] noted that the claimant was "still smoking" against doctor's orders (Exhibit 11F). The undersigned finds that the claimant's continuance of smoking has been against the advice of his treating physician and moreover it has had a negative effect upon his health condition regarding his chronic obstruction pulmonary disease. Although the claimant has received various forms of treatment for the allegedly disabling symptoms, which would normally weigh somewhat in the claimant's favor, the record also reveals that the treatment has been generally successful in controlling those symptoms.

(Tr. 21-22)

Plaintiff contends that the ALJ's credibility determination was based solely on the first sentence of the above quoted portion of his findings. Plaintiff argues that the only specific reason the ALJ cited for finding that he was less than fully credible was that he testified he had stopped smoking when medical records from 2005 and 2006 showed that he had not. Plaintiff argues that his testimony at the hearing in January 2008 that he recently stopped smoking after many unsuccessful attempts was not inconsistent with the medical records dated 2005 and 2006.[7] Plaintiff argues that the ALJ's

---

[6] This treatment note and two others in the case record (Tr. 258-263) were mistakenly attributed by the ALJ to "Dr. William Clifford" because the documents bore the name "William Clifford" at the top of the page. Plaintiff's attorney, Mr. Bornhorst, explained to the Appeals Council that William Clifford was not a treating physician, but an attorney with whom Mr. Bornhorst shared offices. The confusion about the source of these medical treatment notes resulted from the fact that the treatment notes were unsigned (or illegibly signed) by the physician and the copies in the case record, which had been faxed to plaintiff's attorney via a fax number listed in Mr. Clifford's name, included the name William Clifford at the top of each faxed page. See Tr. 8.

[7] The hearing transcript shows that plaintiff testified as follows:

Q. Do you smoke?
A. No not anymore.

24

credibility finding is not supported by substantial evidence because it is based on the ALJ's misinterpretation of his testimony. Plaintiff argues that his testimony about quitting smoking was not contrary to the medical evidence but was actually consistent with the medical evidence. Furthermore, plaintiff argues that the ALJ also ignored the findings and opinions of plaintiff's treating physicians, one of whom stated that plaintiff's quitting smoking would be difficult because nicotine helps his colitis. (Tr. 172). Plaintiff also argues that his treating pulmonary physician "noted that in his opinion plaintiff could not quit smoking." (Tr. 258, Pl. Br. 3). Plaintiff argues that the opinions of his treating physicians should have been given great weight and not ignored because they corroborated plaintiff's hearing testimony. (Pl. Br. 3-4). Plaintiff argues that the ALJ's other findings concerning plaintiff's credibility are "boilerplate generalities and broad conclusions without any reference to specific medical records."(Pl. Br. 10).

The Commissioner argues that the ALJ's credibility determination properly cited a number of reasons for finding that plaintiff's statements about his symptoms were not fully credible, including the fact that he had conservative treatment which, under Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986), is not consistent with an allegation of disability (a condition is not disabling if it can be reasonably controlled by medicine or treatment). The Commissioner argues that the ALJ also pointed out that: plaintiff's physicians placed no restrictions on his activities of daily living or work-related functions despite his impairments; treatment records did not support the limitations

---

Q. How many times have you had a problem with smoking?
A. It took me 15 years to quit.
Q. How many different things have you tried to do to stop smoking?
A. Everything that was on the market at the time. Cigarest, the Nicoderm patch, the gum, the mints, smoke away. I don't remember the name of the pill they just came out with recently.

(Tr. 34)

alleged by plaintiff; and plaintiff's subjective complaints were inconsistent with the objective medical evidence. Finally, the Commissioner argues that plaintiff mischaracterized the ALJ's credibility determination. The Commissioner asserts that the ALJ's finding was not that plaintiff had lied at the hearing about having stopped smoking, but was, instead, a finding that plaintiff's continuance of smoking was contradictory to his allegations that his pulmonary impairment was so severe it prevented him from doing all work. (Def. Br. 8-9).

The ALJ properly followed the two-step process in considering plaintiff's symptoms, and properly followed the regulations, rulings, and case law in determining the credibility of plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms. Substantial evidence supports the ALJ's finding that the plaintiff's subjective complaints of completely disabling impairments were less than fully credible. The ALJ discussed all of the specific factors set forth in SSR 96-7p. <u>See</u> Tr. 20-24.

The record does not support plaintiff's argument that the ALJ's determination of his credibility is based solely on the issue of whether he does or does not continue to smoke. The plaintiff's smoking was only one of several factors considered by the ALJ. The fact that plaintiff smoked against his physicians' advice is well documented in the case record. In testifying that he no longer smoked, plaintiff did not specify whether he quit minutes, hours, days, weeks, months, or years before the hearing. He did testify that it had taken him fifteen years to quit smoking and that he had tried every "stop smoking" product on the market. (Tr. 34). Based on the record, the ALJ concluded that plaintiff did not stop smoking which was against his physicians' advice and opinions.

Plaintiff's characterization of treatment notes that document his continued smoking as "opinions" of his physicians "that he could not stop smoking" is disingenuous. "Medical source

opinions" are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of a claimant's impairment(s), including symptoms, diagnosis and prognosis, what the claimant can still do despite impairment(s), and the claimant's physical or mental restrictions. See SSR 96-5p and 20 C.F.R. §§ 404.1527(a)(2) and 416.927(a)(2)). The treatment notes referred to here are simply his physicians' documentation of plaintiff's subjective complaints or reports of his medical history.[8]

**The ALJ properly considered all of plaintiff's impairments and their combined effects.**

Walker v. Bowen, 889 F.2d 47 (4th Cir) states "Congress explicitly requires that the combined effect of all the individual's impairments be considered, without regard to whether any such impairment if considered separately would be sufficiently severe." Walker, 889 F.2d at 49. See 20 C.F.R. §§ 404.1523 and 416.923. "An impairment can be considered as "not severe" only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984). However, the mere presence of a physical disorder is not necessarily disabling; rather, there "must be a showing of related functional loss." Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986). If a symptom can be reasonably

_____

[8] One of the two "opinions" plaintiff offers in defense of his continued smoking, i.e. that "quitting smoking is difficult because nicotine helps his colitis," includes a note that the physician "recommend[ed] using nicotine gum or lozenges for now" instead of smoking. (Tr. 172). Plaintiff offered no testimony or other evidence that he continued to smoke because of the possible beneficial effects of nicotine in reducing symptoms of colitis. He also offered no evidence as to why he continued to smoke when it was recommended by his physician that he obtain nicotine through alternative sources.

controlled by medication or treatment, it is not disabling. <u>Purdham v. Celebrezze</u>, 349 F.2d 828, 830 (4th Cir. 1965).

Plaintiff testified that his sleep apnea was "pretty much under control" with the use of a CPAP (continuous positive airway pressure) machine with oxygen while he sleeps. (Tr. 36-37). The ALJ found that "[t]he treatment note of June 2005 noted that the claimant was doing "well" with his oxygen and CPAP machine with no complaints (Exhibit 10F). Moreover, the claimant testified that his sleep apnea was under control." (Tr. 18).

Plaintiff testified that his ulcerative colitis was "in remission" and that he has a flair up "every now and then" or "once every three to four months" that "will last a day or two" and "some of the flair ups are severe" which cause him to have to go to the rest room "every 15, 20 minutes." (Tr. 35). The ALJ found that plaintiff's treating gastroenterologist, Dr. Salvatore A. Moscatello, noted in March 2003 that the claimant was doing "very well" despite his significant weight gain. Additionally, Dr. Moscatello noted a surveillance endoscopy in March 2004 looked "satisfactory" (Exhibit 5F). (Tr. 18-19). The medical records in the case file show that plaintiff saw Dr. Moscatello again in January 2006 "after a long absence" at which time his medications were continued as before and he was told that he "does not need another colonoscopy unless he has new symptoms for another four years." (Tr. 231-232). The ALJ also noted that an August 2007 treatment note from the physician at Palmetto Primary Care Physicians indicated "the claimant denied nausea, vomiting, diarrhea, constipation, and/or abdominal pain (Exhibit 12F)." (Tr. 19). The ALJ found that "the claimant's sleep apnea and ulcerative pan-colitis are not found to be "severe" impairments, as they either are not supported by objective signs, symptoms, or laboratory findings or no more than minimally affect the claimant's ability to perform work related activity (20 CFR 404.1508 and 416.908)." (Tr. 19).

Plaintiff argues that the ALJ did not discuss what, if any, limitations plaintiff's colitis and obstructive sleep apnea imposed, nor did he discuss the combined effect of plaintiff's colitis and sleep apnea on each other, or in combination with his other "severe" impairments. (Pl. Br. 11) Finally, plaintiff argues that the ALJ failed to comply with SSR 02-1p by not considering the effect of plaintiff's obesity on his other "severe" and "not severe" impairments. (Pl. Br. 12). The Commissioner argues that the ALJ's findings, based on the medical evidence and the plaintiff's testimony that his sleep apnea was under control and that his colitis was in remission, indicate there was no evidence that plaintiff's sleep apnea or colitis caused any work related limitations. (Def. Br. 9). The Commissioner argues that plaintiff simply failed to meet his burden to show that these non-severe impairments limited his ability to perform basic work activities. The Commissioner argues that, because the ALJ discussed each of plaintiff's impairments and noted they "no more than minimally affect[ed] the claimant's ability to perform work related activity," under Eggleston v. Bowen, 851 F.2d 1244 (10th Cir. 1988), the ALJ's decision in this regard satisfies the proper legal standard and is supported by substantial evidence. See Eggleston, 851 F.2d at 147 (where the ALJ considered all of a claimant's impairments, there is nothing to suggest that they were not properly considered in combination).

The ALJ's decision took into account the plaintiff's combination of impairments, specifically in making his determination that plaintiff had the residual functional capacity (RFC) to perform only a limited range of sedentary work, i.e. "Sedentary work allowing a sit/stand option with occasional climbing of ramps and stairs. Additionally, the claimant can occasionally balance, stoop, kneel, crouch, and crawl; however, the claimant should never climb ladders, scaffolds, and ropes and should never be exposed to extreme temperatures, fumes, odors, gases, etc., and/or hazards." (Tr. 20). In the

ALJ's discussion of the evidence of record, including the medical evidence and the plaintiff's testimony at the hearing, he noted that the state agency medical consultant had opined that plaintiff could perform light work. Then, the ALJ specifically stated "[t]he undersigned has considered this opinion, but has elected to impose more restrictions upon the claimant's residual functional capacity (i.e. sedentary) *due to the combination of the claimant's severe impairments*." (Tr. 24, emphasis added). Elsewhere in the same portion of his decision, the ALJ specifically stated, in finding that plaintiff's obesity was a severe impairment, that he had "evaluated this impairment according to the requirements of Social Security Ruling 02-1p" and went on to discuss the functional limitations caused by plaintiff's obesity and obesity-related impairments. (Tr. 23). Additionally, the ALJ's decision cited SSR 96-9p which contains the same language as SSR 02-1p as to the careful consideration that is required in determining a claimant's residual functional capacity (RFC), i.e. the ability to do sustained work activities "on a regular and continuing basis" for" eight hours a day, for five days a week, or an equivalent work schedule." <u>See</u> SSR 02-10 and 96-9p. The ALJ applied the correct legal standards and made findings that were supported by substantial evidence in considering all of plaintiff's impairments and their combined effects.

## <u>CONCLUSION</u>

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence, <u>Richardson v. Perales</u>, <u>supra</u> and whether correct legal principles were applied. The Court may not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ] <u>Id</u>. Accordingly, a court

may not undertake a de novo review of the Commissioner's decision, and the fact that the record may support a conclusion inconsistent with that of the Commissioner is immaterial. <u>Blalock v. Richardson</u>, 483 F.2d 773, 775 (4th Cir. 1972). Plaintiff's arguments fail to show that the ALJ's decision was not based on substantial evidence and the application of correct legal principles. Accordingly, pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. §§ 405(g) and 1338(c)(3), it is,

RECOMMENDED that the Commissioner's decision be affirmed.


Respectfully submitted,

s/Thomas E. Rogers, III

November <u>6</u>, 2009                    Thomas E. Rogers, III
Florence, South Carolina            United States Magistrate Judge