IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| David L. Thornsberry, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 4:08-4075-HMH-TER |
| | ) | |
| vs. | ) | **OPINION & ORDER** |
| | ) | |
| Michael J. Astrue, Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court with the Report and Recommendation of United States Magistrate Judge Thomas E. Rogers, made in accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 of the District of South Carolina.[1] David L. Thornsberry ("Thornsberry") seeks judicial review of the Commissioner of Social Security's ("Commissioner") denial of his applications for disability insurance benefits ("DIB") under Title II of the Social Security Act and supplemental security income ("SSI") under Title XVI of the Social Security Act. In his Report, Magistrate Judge Rogers recommends affirming the Commissioner's decision. For the reasons stated below, the court affirms the Commissioner's decision.

---

[1] The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. See Mathews v. Weber, 423 U.S. 261, 270-71 (1976). The court is charged with making a de novo determination of those portions of the Report to which specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge or recommit the matter with instructions. See 28 U.S.C. § 636(b)(1).

1

## I. Factual and Procedural Background

The facts are fully set forth in the decision of the administrative law judge ("ALJ"), (R. at 16-25.), and summarized as follows. At the time of the hearing before the ALJ, Thornsberry was a fifty-year-old man with a high school education. (Id. at 29.) His past employment includes work as a pizza driver, manager of a pizza business, and security surveillance system monitor.[2] Rollins alleges disability due to chronic obstructive pulmonary disease ("COPD"), obesity, depression, chronic ulcerative colitis, and obstructive sleep apnea. (Id. at 18-19.)

On October 15, 2005, Thornsberry filed applications for DIB and SSI. (Id. at 16.) The applications were denied initially and on reconsideration. On February 25, 2008, after a hearing held on January 4, 2008, the ALJ found that Thornsberry was not disabled. (Id.) Thornsberry filed the instant action on December 19, 2008. The Report and Recommendation was entered on November 6, 2009. Thornsberry filed objections on November 25, 2009. The Commissioner filed a reply on December 7, 2009.

## II. The Magistrate Judge's Report

Thornsberry raised the following issues in his brief:

I. Did the ALJ commit a reversible error in finding that the plaintiff could return to his past relevant work as a security monitor when there is no substantial evidence to support such a finding?
II. Is the ALJ's finding concerning plaintiff's credibility insufficient and not supported by substantial evidence?
III. Did the ALJ commit a reversible error in not considering all of the plaintiff's medical conditions and their combined effects?

---

[2] As discussed hereinafter, Thornsberry alleges that his past work as a security surveillance system monitor was not substantial and gainful activity that constitutes past relevant work.

(Pl. Br. 3.) The magistrate judge concluded that the ALJ's decision was supported by substantial evidence. (Report and Recommendation, generally.) Therefore, the magistrate judge recommends affirming the Commissioner's decision.

### III. Discussion of the Law

#### A. Standard of Review

Under 42 U.S.C. § 405(g), the court may only review whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). In other words, the court "must uphold the factual findings of the Secretary [only] if they are supported by substantial evidence *and* were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (emphasis added).

"Substantial evidence" is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (internal quotation marks omitted). Hence, if the Commissioner's finding is supported by substantial evidence, the court should uphold the finding even if the court disagrees with it. See id. However, "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

#### B. Objections

Objections to the Report must be specific. Failure to file specific objections constitutes a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the district judge. See United States v. Schronce, 727 F.2d 91,

94 & n.4 (4th Cir. 1984).  In the absence of <u>specific</u> objections to the Report of the magistrate judge, this court is not required to give any explanation for adopting the recommendation.  See Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983).

Thornsberry objects to the magistrate judge's recommendation, arguing that the ALJ erred in failing to (1) "set out specific reasons for his or her credibility determination," (2) properly assess and discuss the combined effects of Thornsberry's impairments, and (3) acknowledge that Thornsberry's past work as a security surveillance system monitor was not "past relevant work."  (Objections, generally.)

### 1. Thornsberry's Credibility

Thornsberry objects to the ALJ's credibility determination alleging that the ALJ did not consider the entire record or "set out specific reasons for his or her credibility determination." (<u>Id.</u> at 1.)  At his hearing, Thornsberry alleged that he suffers from severe "shortness of breath all the time" and frequently relies on medications to assist him with his breathing.  (R. at 31-34.) Additionally, Thornsberry alleged that he is unable to walk short distances without pausing to catch his breath.  (<u>Id.</u> at 34.)  The ALJ concluded that Thornsberry's "medically determinable impairments could reasonably be expected to produce some of the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity [("RFC")] assessment."  (<u>Id.</u> at 21.)

"[T]he determination of whether a person is disabled by pain or other symptoms is a two-step process."  <u>Craig</u>, 76 F.3d at 594.  "First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological,

or psychological abnormalities and *which could reasonably be expected to produce the pain or other symptoms alleged*." Id. In order "for [symptoms] to be found to be disabling, there *must* be shown a medically determinable impairment which could reasonably be expected to cause not just pain, or some pain, or pain of some kind or severity, but *the [symptoms] the claimant alleges [he] suffers*." Id. "It is only *after* a claimant has met [his] threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the [symptoms] claimed, that the intensity and persistence of the claimant's [symptoms], and the extent to which it affects [his] ability to work, must be evaluated." Id. at 595.

Thornsberry alleges that the ALJ did not "consider the entire record" or "set out specific reasons for his or her credibility determination." (Id. at 1.) Thornsberry's testimony "need not be accepted to the extent that [it is] inconsistent with the available evidence . . . ." Hines v. Barnhart, 453 F.3d 559, 565 n.3 (4th Cir. 2006). "[O]bjective medical evidence and other objective evidence are . . . crucial to evaluating the intensity and persistence of a claimant's [certain symptoms] and the extent to which [they] impair[] [his] ability to work." Craig, 76 F.3d at 595. "Although a claimant's allegations about [the severity of his symptoms] may not be discredited solely because they are not substantiated by objective evidence of the [symptoms] [themselves] or [their] severity, they need not be accepted to the extent they are inconsistent with the available evidence . . . ." Id.

First, Thornsberry alleges that the ALJ did not properly consider that his "treating pulmonary physician noted that in his opinion [he] could not quit smoking." (Pl. Br. 10.) Thornsberry's medical records provide that as of October 23, 2006, he smoked 1.5 packs of cigarettes a day and complained of being "unable to stop smoking." (R. at 213, 233, 258.)

5

Dr. William Clifford ("Dr. Clifford") of Palmetto Primary Care Physicians, indicated in a progress note under "History of Present Illness" that Thornsberry had been unable to stop smoking; Dr. Clifford never opined that Thornsberry was unable to stop smoking. The ALJ explained that although Thornsberry testified that he had stopped smoking, his medical records show that he has continued to smoke against medical advice. (Id. at 21-22.)

The ALJ concluded that Thornsberry's "continuance of smoking has been against the advice of his treating physician and moreover it has had a negative effect upon his health condition regarding his [COPD]." (Id. at 22.) The ALJ noted that Thornsberry continued to smoke "despite his complaints of dyspnea, coughing, and wheezing" and the medical evidence showed that smoking worsened those symptoms. (Id.) As such, the ALJ reasoned that Thornsberry's alleged symptoms were not as severe as he claimed because they did not stop him from continuing to smoke against medical advice. (Id.) "A follow up visit at the Medical University of South Carolina Hospital in June 2005 noted that [Thornsberry] had cut back from three packs per day to one pack per day, which showed in his examination that his cough, dyspnea, and wheezing had all improved." (R. at 22.) Accordingly, the ALJ properly considered Thornsberry's medical history as it relates to his smoking.

Second, Thornsberry asserts that his "continuation of smoking was the single specific reason the ALJ cited for his findings concerning [his] credibility." (Objections 2.) However, the ALJ provided additional reasons for his conclusion. According to the ALJ,

> [a]lthough [Thornsberry] has received various forms of treatment . . . the record also reveals that the treatment has been generally successful in controlling [his] symptoms. . . . Additionally, given [Thornsberry's] allegations of totally disabling symptoms, one might expect to see some indication in the treatment records of

> restrictions placed on [him] by his treating physician; however, a review of the record in this case reveals no restrictions were recommended.

(R. at 22.) The ALJ also noted that despite Thornsberry's allegations of total disability, neither his obesity nor his COPD placed severe restrictions on his ability to function.

> In March 2006[,] Dr. Bates noted [that Thornsberry's] range of motion in his bilateral extremities was normal. In April 2007[, his] weight had decreased [from 300 pounds] to 267 pounds. Moreover, [he] had no evidence of edema, cyanosis, clubbing, or tenderness in his bilateral extremities and his gait was normal and cranial nerves intact. As such, the treatment notes reveal that despite his obesity, [Thornsberry] was able to move about generally well and sustain consistent function. Objective examination has revealed that [Thornsberry] had good muscle tone, despite his increased body mass.

(Id. at 23.) Additionally, on April 23, 2007, Thornsberry met with Dr. Clifford complaining of anxiety. During Thornsberry's visit, Dr. Clifford noted that while Thornsberry complained of "shortness of breath and wheezing," his chest examination revealed "clear to auscultation, no wheezing, no crackles, no rales." (Id. at 260-61.) Likewise, a chest examination by Dr. Clifford on August 10, 2007, revealed the same results–"clear to auscultation, no wheezing, no crackles, no rales." (Id. at 263.)

Third, Thornsberry argues that his use of an oxygen machine should be "relevant and material medical evidence" to determine that his allegations of disability are credible. (Objections 3.) Thornsberry testified that he used his oxygen machine at night when he slept and "usually about once a month or so [if he has] a bad day breathing." (R. at 33.) The ALJ noted that Thornsberry used the oxygen machine primarily at night and occasionally if he had breathing problems during the day and did not appear to discount Thornsberry's testimony as it relates to the use of the oxygen tank. (Id. at 21.) To the extent that Thornsberry objects that the ALJ should have considered that his use of an oxygen machine alone indicated the severity of

7

symptoms, this objection is without merit. The ALJ took into consideration Thornsberry's use of the oxygen machine, yet still determined that other factors did not evidence that his symptoms were as severe and persistent as Thornsberry alleged. (Id. at 21-22.) Based on the foregoing, the court finds that the ALJ properly considered Thornsberry's credibility and provided ample support in determining that Thornsberry's statements concerning his symptoms were not fully credible. The ALJ's conclusion that Thornsberry's statements regarding the intensity, persistence, and limiting effects of his symptoms were not entirely credible is supported by substantial evidence. As such, Thornsberry's objection is without merit.

### 2. Combination of Impairments

Next, Thornsberry alleges that the ALJ did not "discuss the combined effect of [his] colitis and severe obstructive sleep apnea on each other or in combination with [his] 'severe' impairments." (Pl. Br. 11.) The ALJ concluded that Thornsberry "has the following severe impairments: [COPD], obesity, and depression." (R. at 18.) "While [Thornsberry] was diagnosed with sleep apnea and ulcerative pan-colitis," the ALJ concluded that his treatment was "generally successful" and those ailments were not severe impairments. (Id.) Next, the ALJ concluded that Thornsberry did not have "an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (Id. at 19.)

When a claimant has a number of impairments, the ALJ must "compare [the claimant's] findings with those for closely analogous listed impairments. If the findings related to [the claimant's] impairments are at least of equal medical significance to those of a listed impairment, [the ALJ] will find that [the claimant's] combination of impairments is medically

equivalent to that listing." 20 C.F.R. § 416.926(b)(3) (2006). "[I]n evaluating the effect of various impairments upon a disability benefit claimant, the [ALJ] must consider the combined effect of a claimant's impairments." Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). "Congress explicitly requires that the combined effect of all the individual's impairments be considered, without regard to whether any such impairment if considered separately would be sufficiently severe." Id. at 49 (internal quotation marks omitted). "As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments." Id. at 50.

After discussing each of Thornsberry's impairments, both severe and non-severe, the ALJ discussed the impairments in combination. According to the ALJ,

> [i]n activities of daily living, [Thornsberry] has no restriction . . . . [Thornsberry] could care for his own personal hygiene with only minimal difficulty and . . . he was able to drive. In social functioning, [he] has mild difficulties. . . . With regard to concentration, persistence or pace, [Thornsberry] has mild difficulties. Treatment records were consistent in that [Thornsberry] was alert and oriented times three with normal mood, affect, judgment, and insight.

(R. at 19.) Additionally, in discussing Thornsberry's ability to perform work, the ALJ noted that although "the State Agency medical consultants determined that [Thornsberry] could perform light work . . . [t]he undersigned has considered this opinion, but has elected to impose more restrictions upon [Thornsberry's] residual functional capacity ("RFC") (i.e. sedentary) due to the *combination of [Thornsberry's] severe impairments*." (Id. at 24 (emphasis added).) Accordingly, the court finds that while the ALJ could have been more explicit in stating that his discussion dealt with the combination of Thornsberry's impairments,

9

his overall findings adequately evaluate the combined effect of Thornsberry's impairments. Any error on the part of the ALJ in failing to use explicit language is harmless.

Thornsberry also objects to the ALJ's finding because the ALJ failed to discuss the combined effects of Thornsberry's use of oxygen and nebulizer machines. (Objections 5.) According to Thornsberry, "[his] need to use of an oxygen machine at home clearly illustrates that the ALJ did not consider the combined effects of all of [his] impairments." (Id.) This objection is without merit. Neither the oxygen nor nebulizer machines are impairments, rather they are methods of treatment for Thornsberry's COPD. Moreover, Thornsberry testified that he primarily uses the oxygen machine while he is asleep thereby making its use insignificant in determining its impact on his ability to work. (R. at 33.)

### 3. Thornsberry's Past Relevant Work

Lastly, Thornsberry argues that his work as a security surveillance system monitor "was not at the substantial gainful activity level and, therefore, should not be considered as past relevant work." (Objections 6.) Thornsberry testified that he worked as a security surveillance system monitor for Dillard's for six months in 2005. (R. at 29.) Thornsberry alleges that he was fired from Dillard's "due to missing work because of health." (Id.)

"Substantial work activity is work activity that involves doing significant physical or mental activities. . . . [W]ork may be substantial even if it is done on a part-time basis or if [a claimant] do[es] less, get[s] paid less, or ha[s] less responsibility than when [he] worked before." 20 C.F.R. § 404.1572(a). "Gainful work activity is work activity that [is done] for pay or profit." § 404.1572(b). Upon review of the record, the court finds that there is substantial evidence to support the ALJ's conclusion that Thornsberry's work as a security surveillance system monitor

constitutes substantial and gainful employment. A claimant's "earnings may show [that he has] done substantial gainful activity. Generally, in evaluating [a claimant's] work activity for substantial gainful activity purposes, [the] primary consideration will be the earnings you derive from the work activity." 20 C.F.R. § 404.1574(a)(1). In his Work Activity Report, Thornsberry stated that he earned $866 per month from March 2005 through August 2005 from his employment as a security surveillance system monitor. (R. at 95.) In 2005, employment which resulted in a monthly income of more than $830 constituted substantial gainful activity. See DI 10501.015, "Tables of SGA [Substantial Gainful Activity] Earnings Guidelines and Effective Dates Based on Year of Work Activity," https://secure.ssa.gov/apps10/poms.nsf/lnx/0410501015. Accordingly, Thornsberry's past work as a security surveillance system monitor was substantial gainful activity.

Thornsberry alleges that his work experience at Dillard's constitutes an unsuccessful work attempt. (Objections 7.) "Ordinarily, work [the claimaint] ha[s] done will not show that [the claimaint] [is] able to do substantial gainful activity if, after working for a period of 6 months or less, [the claimaint's] impairment forced [the claimaint] to stop working or to reduce the amount of work [the claimaint] do[es] *so that [the claimaint's] earnings from such work fall below the substantial gainful activity earnings level*." § 404.1574(c)(1) (emphasis added). Thornsberry's absences from work did not result in his earnings falling below the $830 per month standard for 2005 and he did not quit his job due to an inability to perform. "There must be a significant break in the continuity of [the claimaint's] work before we will consider that [the claimaint] began a work attempt that later proved unsuccessful." § 404.1574(c)(2). The ALJ based his conclusion that Thornsberry could perform his past relevant work as a security monitor

on the testimony of Dr. Arthur Schmitt, the vocational expert ("VE"), as well as the conclusions of Dr. George Keller, III, a physician for the State Disability Determination Services, that Thornsberry was capable of light work. (R. at 24-25, 238-45.) Based on the following, the court finds that the ALJ's determination that Thornsberry's previous work as a security surveillance system monitor constitutes past relevant work is supported by substantial evidence. Therefore, the court adopts Magistrate Judge Rogers' Report and Recommendation.

It is therefore

**ORDERED** that the decision of the Commissioner is affirmed.

**IT IS SO ORDERED**.

s/Henry M. Herlong, Jr.<br>Senior United States District Judge

Greenville, South Carolina
January 12, 2010